[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 9549
The plaintiff husband commenced this action for dissolution of marriage on the grounds of irretrievably breakdown by complaint dated June 29, 2000.
Each party was present at trial, represented by counsel and testified. The trial continued over the course of a number of days and at the conclusion of trial each counsel had the opportunity to make a closing oral argument.
From the evidence the court finds as follows:
The parties were married in Bucharest, Romania on October 11, 1973. They have resided continuously in the State of Connecticut for more than one year before the date of the complaint.
Each party was born in April of 1948 in Bucharest, Romania. Each possesses a master's degree in Engineering. Each appears to be in generally good health, although the wife has had recent surgery. The parties have one child, Michael, born February 6, 1987.
The husband has gross income from his principle employment of $1,783.09 per week, with gross income from other sources in the amount of $262.63 per week. The income from other sources will vary from time to time. His financial affidavit shows a total net income of $1,316.84. His financial affidavit includes bonus income which has been received on a consistent and increasing basis over time but is not guaranteed to him in the future.
The wife is presently unemployed and her sole income on her financial affidavit is alimony in the amount of $80.00 per week. The wife's employment status is a major item of contention between the parties.
Prior to November, 1993, the wife was employed by NorthEast Utilities at a salary in excess of $50,000.00 per year in a position which also provided her with substantial fringe benefits. She was terminated from her employment with NorthEast Utilities in November of 1993 for what NorthEast Utilities claimed was incompetence. The wife's version of the termination was that it was retaliation for whistle blowing activities. The wife has several involved actions pending regarding the discharge from NorthEast Utilities. One of her actions has included a request for certiorari from the United States Supreme Court.
This court ruled at the outset of the trial that it was not going to CT Page 9550 allow evidence on the merits on the dispute between the defendant wife and NorthEast Utilities. This court is in no position to make a determination whether the wife's discharge was for incompetence or m retaliation.
It is clear that the wife has paid $62,040.00 in legal fees for litigation surrounding her discharge from NorthEast Utilities. It is also true that a substantial portion of this money was removed from accounts containing pre-taxed dollars, thereby producing substantial taxes and penalties.
Prior to the institution of this action, the husband appears to have enjoyed annual trips to Israel and Romania. The wife did not accompany him on these trips, although it is disputed whether she would have been welcomed to travel with the husband if she had chosen to do so.
The defendant wife believes that the plaintiff husband had an affair with his Russian speaking art teacher. The husband denies this affair. The court finds the evidence inconclusive and finds that the evidence is insufficient to conclude by a preponderance of the evidence that a physical relationship existed between the husband and the art teacher.
It is clear to the court that the marriage has broken down irretrievably. The immediate cause of the breakdown appears to be the husband's belief that the wife has become obsessed with her employment termination litigation.
The wife clearly has a substantial portion of her self esteem and self worth invested in her professional life and as a result has suffered severe damage to her self image as a result of her discharge from NorthEast Utilities. The evidence is inclusive whether her concern with the discharge was obsessive or was an appropriate response to mistreatment by her former employer. Only the resolution of the pending litigation between the wife and NorthEast Utilities will begin to answer that question.
Each party appears to the court to be a competent and caring parent. The minor child Michael appears to be an understandable source of joy and pride to each parent. He is a child who enjoys musical, athletic and academic success to a greater than average degree. While each parent appears to be admirable in their concern for Michael, they have over time had rather serious disagreements on child rearing. In general terms the defendant mother appears to have advocated a rather heavy schedule of planned activities and religious instruction for Michael, while the plaintiff father appears to have believed that Michael's schedule was too filled and that he would benefit from less structure in his life. CT Page 9551
The wife has made some efforts to obtain employment. She claims to be blackballed in the nuclear industries by NorthEast Utilities. She clearly has non-nuclear engineering skills. With her skills, the age of the child, and her health condition, it appears that the wife could reasonably expect to obtain professional employment within a reasonable period of time.
The court finds that the parties have acquired the following assets:
A. Husband
 2000 Honda $11,700.00, loan $4,604.00 Hudson Checking $2,500.00 Fidelity Cash $26,937.00 Fidelity Brokerage $2,250.00 ALOKA 401K $202,770.00 IRA $260,476.00;
B. Wife
 1998 Honda $9,700.00, loan $2,184.00 Fidelity Investors $143,374.00 NorthEast Utilities pension $618.00 per month;
C. Joint
 Art collection — split Fleet Boston — split $200.00 American Century Ultra — split $14,323.00 Fidelity Asset — split $15,460.00 15 Sutton Place, — to wife $284,000.00, subject to $62,000.00 mortgage
The parties have acquired the following liabilities:
I Husband: Legal expenses for divorce $4,900.00; Federal Income Tax due $10,216.00; State Income Tax due $834.00; Tax preparation fee due $450.00.
II Wife: Chase Manhattan Visa $9,600.00, Dutch Point Visa $1,529.00, Chase Manhattan Master Card $9,500.00, Federal 2000 Income Taxes due $48,565.00, Federal 2000 Income Tax interest and penalties unknown, Alba Magid $3,000.00, Attorney fees for divorce $7,600.00.
The court has considered all the criteria in 46b-81 and 46b-82 in light of the evidence and the findings in determining the awards set forth CT Page 9552 below. The court has also considered the taxable implication and the consequences of said awards. The follow orders are entered:
1. The marriage is dissolved.
2. The parties shall have joint legal custody of the minor children Michael D. Alexandru, with primary residence with the defendant mother.
The parenting plan shall be as follows:
A. The child shall be with his Father every other weekend from Friday at 5:00 p.m. to Monday morning drop off at school, or if school is not in session, at the mother's residence at 7:30 a.m. Additionally, the child will be with his Father every Wednesday from 5:30 p.m. until 9:30 p.m. Additionally, the child shall be with his Father on Monday evenings for dinner, on the Monday following the mother's weekend from 5:30 p.m. until 9:30 p.m.
B. If the child has an activity that falls on Wednesday evening or Monday evening, and it cannot be rescheduled, the parties, by agreement, can change the weekday to another mutually agreeable weekday.
C. The child will be with his Mother the remainder of the week unless the Mother's schedule requires that she cannot care for the child for any day or evening at which point the Father will be given the right of first refusal.
D. If Monday is a school holiday whichever parent has the child the preceding Sunday shall keep the child until Monday at 5:30 p.m.
E. During the child's summer school vacation, the child will spend every Monday evening overnight with the Father in addition to his other parenting time.
F. During the summer school vacation, each parent can take the child for up to two weeks on vacation.
G. Each year the parties shall split the Christmas vacation time equally.
H. Each year the parents can take the child on vacation for either February recess or April recess on an alternating basis.
I. All holidays and vacation times shall take precedence over normal parenting time.
J. Either parent can delegate to the other parent if a visit is not CT Page 9553 possible, with alternative make-up time made available if possible.
K. All parties must give sixty (60) days notice when electing a vacation week or weeks.
L. The parties shall alternate the holidays each year, including Easter, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, Christmas Eve from 4:00 p.m. until 10:00 a.m. Christmas Day, and from 10:00 a.m. Christmas Day until 10:00 a.m. the following day.
M. Each party shall spend time with the child on his birthday.
3. In the event that either party intends to relocate outside a 50 mile radius of Cheshire, Connecticut, they shall provide the other party with written notification of said intent at least 120 days prior to the actual relocation so that the other party may seek judicial intervention. A judicial review of such request for relocation shall be de novo as if no designation of primary residence or primary custody had been made.
4. Child Support shall be in accordance with the Child Support Guidelines and shall be presently in the amount of $235.00 per week. In addition the plaintiff Husband shall provide health insurance in accordance with § 46b-84 (d) or the Husky Plan.
5. In the event of disagreements between the parties, the parties are ordered to submit any such disagreements to private mediation or to Family Relations Department mediation prior to instituting any litigation regarding the matter in Superior Court.
6. The defendant wife is awarded exclusive use and possession of the residence located at 15 Sutton Place, Cheshire, beginning 7 days following the entry of this decree. Plaintiff husband shall deliver to defendant wife, at such time, all keys to the house in his possession or control. Plaintiff husband, upon reasonable notice to the defendant wife, shall be allowed two eight hour continuous periods to remove from the house his clothing, jewelry, personal documents and records and contents of the downstairs office other than the computer, provided that he shall have no right to items owned or purchased by the defendant's mother. The remainder of the contents of the home shall be the sole property of the defendant wife.
7. Notwithstanding any other provision of this decree the plaintiff husband and the defendant wife shall within sixty (60) days of the decree, exchange comprehensive lists of all artwork in the home, including artwork in the office, which was not owned or purchased by defendant's mother. If the parties are unable to agree within thirty (30) CT Page 9554 days following the exchange of such list to a division of the artwork, the defendant wife shall select one object and than the plaintiff husband shall select one object and the parties will alternate the selection of objects until all objects are accounted for.
8. The plaintiff husband shall deliver to counsel for the defendant wife a fully executed quitclaim deed and conveyance tax statements necessary and appropriate for conveying to defendant wife title to 15 Sutton Place, free and clear of all liens and encumbrances.
9. The plaintiff husband shall have no right to, claim against, or interest in the proceeds of any litigation in which defendant wife is now engaged or may engage and no such proceeds or the fruits thereof, shall be the basis of or subject to consideration by the court in a post judgment motion by plaintiff husband to modify the award of periodic alimony.
10. Except as otherwise specifically provided for in this judgment, each party shall retain all assets in his or her name as listed on their respective financial affidavit's and/or as set forth in paragraphs A and B hereof. Each party shall be responsible for all debts in his or her name as listed on their respective financial affidavits, and/or as set forth in paragraphs I and II hereof. Recognizing that the parties have agreed that the wife is to be charged with the $62,000.00 that she has expended on employment termination litigation, the wife shall within thirty (30) days of the entry of this decree deliver to the husband a mortgage deed and note in the amount of $62,000.00 secured by a mortgage on the real estate located at 15 Sutton Place, Cheshire Connecticut. Said note shall bear no interest but shall be due and payable upon the sale of the residence or upon February 6, 2008 whichever occurs first. Except as otherwise specifically set forth herein, the parties shall divide equally assets shown as joint on their financial affidavits and/or as set forth in paragraph C hereof.
11. The plaintiff shall claim Michael on Federal and State Tax Returns beginning in the year 2000 and thereafter, the defendant shall be entitled to claim head of household filing status. Further, each party shall file separate Federal and State Tax Returns for 2000. Each party shall be entitled to take one-half of all deductions attributed to the marital home and half of all interest or capital gains on jointly owned investments.
12. The husband shall pay periodic alimony in the amount of $425.00 per week for fifty-two weeks following the entry of this decree. He shall further pay alimony in the amount of $300.00 per week for 104 weeks following the completion of his obligation during the first fifty-two CT Page 9555 weeks. Following the completion of 3 years or 156 weeks, the husband shall pay alimony at the rate of $100.00 per week until alimony is terminated in accordance with this decree. The husband's obligation to pay alimony shall be until; (A) the death of the husband or wife; (B) the wife's remarriage; (C) the wife's co-habitation as such is defined in the Connecticut General Statutes; (D) or the husband's reaching the age of sixty-five, whichever shall occur first. Provided, however, that the wife shall be solely entitled to any pension due her from NorthEast Utilities. As additional periodic alimony, the plaintiff husband shall pay the cost to maintain for the defendant wife medical and dental insurance through plaintiff's employer under COBRA for one year following the date of this decree.
At the time of hearing the dissolution the court also considered the plaintiff's claim of contempt against the wife for violation of specific orders by Judge Levine. The court finds that the wife is in contempt of Judge Levine's orders, but in view of the comprehensive orders issued this day imposes no sanctions. The defendant wife moved for contempt against the plaintiff husband for alleged violation of the automatic orders. The court finds that the proof is inconclusive and does not find the husband in contempt.
The court orders that each party be solely responsible for his or her legal expenses incurred in this dissolution action.
By the Court,
 _______________ KEVIN E. BOOTH JUDGE of the Superior COURT